UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Central Division)

| | |
|---|---|
| In re: ) ) ) FLETCHER GRANITE COMPANY, LLC, ) *et al.* ) ) Debtors. ) ) ) ) | Chapter 11 Case No. 10-43884-MSH and Case No. 10-44443-MSH (Jointly Administered) |

## ORDER APPROVING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND RELATED RELIEF

This matter came on to be heard by the Court on the motion ("Motion") of Fletcher Granite Company, LLC and Fletcher Granite Company of Georgia, LLC (collectively, the "Debtor" or "Seller") for entry of an order, pursuant to Sections 105(a), 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules') authorizing and approving: (i) the sale of substantially all of the Debtor's assets (including the real property identified on Schedule A hereto) to NESI Realty, LLC (the "Purchaser"), (ii) the assumption and assignment of certain executory contracts and unexpired leases to Purchaser as set forth in the Asset Purchase Agreement, such sale of Debtor's assets and assumption and assignment of executory contracts and unexpired leases for the aggregate purchase price of seven million dollars ($7,000,000), subject to adjustment and all other terms and conditions of the Asset Purchase Agreement, and (iii) certain "Bid Procedures" (as defined below); and the Order (A) Establishing and Approving Bid Procedures, (B) Approving Form and Manner of Notices, and (C) Granting Related Relief ("Bid Procedures Order") having been entered by the Court on September 22, 2010; and it appearing, as more particularly discussed below, that due and appropriate notice of the Motion and relief to be granted by this Order has been provided; and the hearing to consider the Motion and entry of this Order having been concluded on October 27, 2010 (the "Sale Hearing"); and all parties in interest having had the opportunity to be heard regarding the Motion and the relief requested; and the Court being fully advised in the premises makes the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT:**

**Notice**

On September 23, 2010, counsel for the Debtor served a copy of the Sale Notice (as defined in the Motion) by either electronic notice or first class mail, postage prepaid, upon (i) all creditors of the Debtor's estate; (ii) all members and/or equity holders of the Debtor; (iii) all entities known to have expressed an interest in the Debtor and/or a transaction with the Debtor relating to the Assets during the past twelve (12) months; (iv) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Assets and their respective counsel (if known); (v) all federal, state or local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, including, without limitation, the Massachusetts Department of Revenue, the Massachusetts Department of Environmental Protection and the comparable agencies in the State of Georgia; (vi) all non-Debtor parties to the executory contracts and unexpired leases the Debtor or the Purchaser may seek to assume and/or assign; (vii) the U.S. Trustee; (viii) counsel to the Official Committee of Unsecured Creditors ("Committee"); (ix) the U.S. Attorney's office; (x) the Internal Revenue Service; and (xi) all parties who have requested notice in this case pursuant to Bankruptcy Rule 2002(m).

On October 7, 2010, the Debtor served on all non-Debtor parties to the executory contracts and unexpired leases to be assumed and assigned to the Purchaser pursuant to the Asset Purchase Agreement, as defined below (the "Assumed Executory Contracts") a notice (the "Cure Notice") relating to the proposed assumption and assignment of such contracts, which notice set forth, among other things, the amount necessary to cure any defaults (the "Cure Amount") and the date by which objection to the proposed assumption and assignment or the Cure Amount must be filed and served.

Notice of the Motion (and of the relief requested therein, including, without limitation, approval of the Asset Purchase Agreement, as defined below), the Bid Procedures order, the Bid Procedures approved by the Bid Procedures Order ("Bid Procedures"), the Auction as defined in the Bid Procedures, the Cure Amount and the Sale Hearing that has been provided in a manner reasonably calculated to provide actual notice of the Asset Purchase Agreement, Motion and Sale Hearing to all affected and interested parties. Such notice constitutes due, adequate and timely notice in accordance with the requirements of the Bankruptcy Rules, applicable provisions of the Bankruptcy Code and the United States Constitution.

**Competing Offers**

A reasonable opportunity has been afforded to any and all entities to make a higher or otherwise better offer to purchase the Assets and to assert an objection to or to be heard regarding the relief requested in the Motion.

The Debtor received no Qualifying Bids and, accordingly, no Auction was conducted. Accordingly, the Debtor determined, in the exercise of its business judgment, that the offer provided by Purchaser reflects the highest and best bid received by the Debtor. The Debtor has accepted Purchaser's bid, and entered into the Asset Purchase Agreement subject to Court approval.

Any capitalized terms used but not defined herein shall have the same meaning ascribed to such terms in the Asset Purchase Agreement.

**Debtor's Sound Business Judgment**

Since the Petition Date, the Debtor's management has been actively pursuing all available options for implementing an exit strategy in this Chapter 11 proceeding. The Debtor has determined that the value of its business will be best preserved and that recoveries for its creditors will be maximized through a prompt going-concern sale implemented by motion pursuant to Section 363 of the Bankruptcy Code. The Debtor's business judgment in this regard is reasonable and appropriate under the circumstances. Accordingly, the Debtor has sound business reasons for the sale of the Assets pursuant to the Asset Purchase Agreement.

The Debtor actively marketed its assets for sale and has conducted an open and competitive sale process in order to obtain the best offer for the purchase of its assets. The offer of the Purchaser represents the highest and best offer that Debtor has received from its efforts to sell its Assets.

The Debtor, therefore, has sound business reasons for the sale of the Assets to Purchaser pursuant to the Asset Purchase Agreement and the Motion should be approved as it is in the best interests of creditors of the Debtor and other parties in interest.

**Good Faith of the Purchaser**

The Purchaser is purchasing the Assets in good faith in accordance with the open and competitive sales process approved by the Court, and is entitled to the protections of Section 363(m) of the Bankruptcy Code to the maximum extent permitted.

**Miscellaneous**

The Debtor has full authority and power to execute and deliver the Asset Purchase Agreement and all documents contemplated by the Asset Purchase Agreement and to perform all of its obligations in connection therewith and therein. No other consents or approvals are necessary or required for the Seller to enter into the Asset Purchase Agreement, to perform its obligations therein and to consummate the contemplated transactions as set forth in the Asset Purchase Agreement.

Except for the Assumed Obligations specifically identified in the Asset Purchase Agreement, the Purchaser is not assuming any of the debts, liabilities or obligations of the

Debtor. The Debtor and the Purchaser do not have any common shareholders or senior management. The contemplated transactions are being entered into in good faith and not to hinder, delay or defraud any creditors of the Debtor.

No objections to the Sale Motion have been filed. No party has objected to the Debtor's assumption of any Assumed Executory Contract. No party has claimed assumption or assignment of any executory contract or unexpired lease prohibited by Section 365(c) of the Bankruptcy Code or otherwise. None of the non-debtor parties to the Debtor's unexpired leases or executory contracts has alleged or demonstrated that it would be deprived of the full benefit of its bargain if the Debtor assumes and assigns to Purchaser such party's executory contract or unexpired lease. Accordingly, all of the Debtor's executory contracts or unexpired leases may be assumed, and to the extent any such executory contract or unexpired lease has been identified by Purchaser in the Asset Purchase Agreement as an Assumed Executory Contract that it wants assigned to it, such Assumed Executory Contract also may be assigned to Purchaser in its entirety.

## CONCLUSIONS OF LAW

The Court hereby enters the following Conclusions of Law:

### Jurisdiction and Statutory Predicates

The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). Venue of these cases and the Motion in this district is proper under U.S.C. §§ 1408 and 1409.

This proceeding is a "core proceeding" within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (N) and (O).

The statutory predicates for the Motion include Sections 105, 363, 365 and 1146 (a) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

### Sale Free and Clear of Liens

It is a requirement of the Asset Purchase Agreement that the sale of the Assets be free and clear of all liens, claims, encumbrances and interests (collectively, "Liens") and that the Purchaser not be subject to or otherwise liable for any debts or obligations of the Seller except only for the Assumed Obligations.

The holders of Liens and non-Seller parties to Assumed Executory Contracts are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. The holders of Liens or non-Seller parties to Assumed Executory Contracts are adequately protected by having their Liens, if and to the extent valid and enforceable, attach to the proceeds of the sale of the Purchased Assets.

4

Accordingly, the requirements for a sale free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code have been satisfied.

Effective on Closing, the Assets will be transferred, conveyed and assigned by the Seller to the Purchaser, and pursuant to the terms of this Order and the Asset Purchase Agreement, title to all Assets shall vest entirely in the Purchaser pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, free and clear of all Liens.

**No Successor Liability**

The Purchaser is not merely a continuation of the Debtor or its estate. There is no continuity of enterprise between the Debtor and the Purchaser.

The Purchaser is not a successor to the Debtor or its estate, and the transactions contemplated by the Purchase Agreement do not amount to, or otherwise constitute, a consolidation, merger or de facto merger of Purchaser and the Debtor or its estate.

Based on the foregoing Findings of Fact and Conclusions of Law, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

The Findings of Fact set forth above and the Conclusions of law stated herein shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of act, it shall be so deemed.

The Motion is granted as more expressly set forth herein. The Asset Purchase Agreement, and the execution, delivery and performance thereof by the Debtor, are hereby authorized and approved in all respects. ~~The Asset Purchase Agreement is approved in its entirety.~~ Accordingly, the failure specifically to reference any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the efficacy of any such provision.

The Debtor, acting by and through Steven Petrarca as a Director of the Debtor's Chief Restructuring Officer, The O'Connor Group, Inc., and/or any other person duly authorized by the Debtor to act on its behalf, shall have full authority to execute, deliver and perform any and all documents necessary, proper or desirable to implement the transactions contemplated in the Asset Purchase Agreement, and without need for further notice, order of this Court or action by its boards of directors or members, and notwithstanding any requirement under applicable state law to the contrary, is authorized and empowered to take any and all actions necessary or appropriate to consummate the transactions contemplated by the Asset Purchase Agreement (including, without limitation, to convey to the Purchaser the Assets and the Assumed Executory Contracts) in accordance with the Asset Purchase Agreement and this Order and otherwise to

[handwritten margin note: the Asset Purchaser by Buyer and]

perform its obligations under the Asset Purchase Agreement. No members, officers or directors of the Debtor shall be deemed to have incurred, or shall incur, any liability of any kind whatsoever to any entity whatsoever in connection with the solicitation, negotiation, implementation, performance and closing of the terms and conditions of the Asset Purchase Agreement.

Effective upon the Closing, the Assets are hereby transferred, sold and delivered to the Purchaser, free and clear of all Liens (including, without limitation, all Excluded Liabilities) of any Person that encumber or relate to or purport to encumber or relate to the Assets, or otherwise constitute a claim against the Seller, other than the Assumed Obligations. Except for the Assumed Obligations, all Persons and entities holding Liens of any kind or nature, or having any claims or rights that constitute or may constitute Excluded Liabilities, shall be and hereby are barred and enjoined (effective upon the Closing) from asserting such liens against the Purchaser and/or the Assets. Effective upon the Closing, any such Liens shall attach to the proceeds of the sale of the Assets with the same force, validity, priority and effect, if any, as such Liens formerly had against the Debtor and the Assets.

The Purchaser: (i) is not a successor to the Debtor or its estate by reason of any theory of law or equity; and (ii) except with respect to the Assumed Obligations, shall not be liable or in any way be obligated or responsible for any claims against or any indebtedness, liabilities or other obligations of the Debtor or its estate (including, without limitation, the Excluded Liabilities). Without limiting the generality of the foregoing, from and after the Closing, in no event shall the Purchaser have any liability, obligation or responsibility with respect to any liability or obligations of the Debtor to any taxing authorities, including any personal property taxes that may have accrued or otherwise become payable in connection with any of the Assets prior to Closing. Effective on the Closing, except for the Assumed Obligations, all Persons shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Purchaser, as alleged successor to the Debtor or otherwise to assert that Purchaser has any liability or responsibility with respect to any indebtedness, liability or obligation of the Debtor or its estates (including, without limitation, the Excluded Liabilities and Excluded Assets).

Notwithstanding the foregoing, from and after the Closing, the Purchaser shall provide access, during Purchaser's normal business hours and upon such terms and conditions as the Purchaser may reasonably require, to creditors of the Debtor who, pursuant to order of the Court, hold title to inventory located on the Real Property and request access to take possession of such inventory. Purchaser shall give the Debtor reasonable prior notice of any creditor taking possession of inventory to allow the Debtor to be present and verify that such creditor takes possession only of the inventory to which it holds title. The Purchaser shall have no obligation under this paragraph, to assist a creditor in any activities on the Real Property, such as accessing or loading inventory or otherwise unless (and shall be entitled to require) such creditor signs a written agreement, in form and substance reasonably satisfactory to Purchaser, indemnifying and defending the Purchaser for any losses, damages, claims and the like occurring while such creditor

is on the Real Property. Purchaser shall have no obligation to maintain, protect, insure or in any way directly or indirectly care for, preserve, segregate or account for any such inventory remaining on the Real Property from and after the Closing. Purchaser shall have no liability whatsoever to any entity, including the Debtor and any creditor of the Debtor, for any act or omission of Purchaser occurring or existing in connection with Purchaser's performance of its obligations under this paragraph.

This Order: (1) is and shall be effective as a determination that upon Closing title to the Assets shall be vested in Purchaser and that all Liens existing as to the Assets have been and hereby are declared to be unconditionally released, discharged and terminated as a Lien in, to or upon any such Assets; and (ii) shall be binding upon and govern the acts of all Persons, including, without limitation, all filing officers, recorders of mortgages and deeds, and other state, federal and local officials. Upon request of the Purchaser, all such Liens of record shall, upon the Closing, be forthwith removed and stricken as against the Assets. Notwithstanding the foregoing, if any Person fails to timely deliver prior to the Closing termination statements, releases of Liens or other documents necessary for the release of Liens with respect to the Assets, the Seller and/or the Purchaser are hereby authorized to execute and file such documents on behalf of such Person.

The Debtor is hereby authorized, in accordance with Sections 365(b)(1) and 365(b)(2) of the Bankruptcy Code, to: (i) assume and assign and transfer to the Purchaser the Assumed Executory Contracts free and clear of all Liens, and (ii) execute and deliver to the Purchaser such assignment documents as may be necessary to confirm such assignment and transfer. The Debtor has either cured or has provided adequate assurance of its cure of any default or breaches required to be cured under any of the Assumed Executory Contracts, within the meaning of Section 365(b)(1)(A) and (B) of the Bankruptcy Code. The Purchaser has provided adequate assurance of its future performance of and under the Assumed Executory Contracts, within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code. The only adequate assurance of its future performance of and under the Assumed Executory Contracts required by the Purchaser shall be the Purchaser's promise to perform in accordance with the Assumed Executory Contracts with respect to obligations first arising or incurred following the Closing.

The Assumed Executory Contracts shall be transferred and assigned to the Purchaser, and following the Closing remain valid and binding and in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Executory Contract (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. Any provisions in any Assumed Executory Contract that prohibit or condition the assignment of such Assumed Executory Contract or allow the party to such Assumed Executory Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Executory Contract constitute unenforceable anti-assignment provisions which are void and of no force and effect. All other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code

for the assumption by the Debtor and assignment to the Purchaser of each Assumed Executory Contract have been satisfied and, upon Closing, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Executory Contract.

Except as set forth below, the Court hereby determines that the Cure Amounts set forth on the Cure Notice constitute all of the cure amounts that are required to be paid in order to assume and assign the Assumed Executory Contracts. Except for the right to obtain payment of the Cure Amounts from Debtor, pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assumed Executory Contracts are forever barred and enjoined from raising or asserting against the Debtor and the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Executory Contracts existing as of the Closing or arising by reason of the Closing. Any party that may have had the right to consent to the assignment of its Assumed Executory Contract is deemed to have consented to such assignment for purposes of Section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if it failed to object to the assumption and assignment.

The provision of this Order and any actions taken pursuant hereto shall survive the entry of an order which may be entered confirming any plan of reorganization or liquidation for the Debtor, converting Debtor's case from Chapter 11 to a case under Chapter 7 of the Bankruptcy Code appointing a trustee or dismissing the Debtor's case.

The Court shall retain jurisdiction to enforce the provisions of this Order and the Purchase Agreement.

Notwithstanding anything to the contrary contained in the Asset Purchase Agreement or this Order, this Order does not approve the assignment of any license to use software (the "Infor Software") of Infor Global Solutions (Michigan), Inc. under which the Debtor is the licensee ("Alleged Infor License"). From and after entry of this Order, and continuing for a period of 60 days from and after Closing, the Debtor, at its sole cost and expense, shall from time to time provide information available through the use of the Infor Software ("Information") to the Purchaser, promptly upon Purchaser's reasonable request. No later than 60 days after Closing, the Debtor, at its sole cost and expense, shall provide all Information requested by Purchaser in electronic form in a .xls or .xlsx format compatible with Microsoft Excel software. If the Debtor cannot convey the Infor Software, or assign its rights under any Alleged Infor License, and if such Infor Software resides on computer equipment that constitutes Purchased Assets, then at the Debtor's sole cost and expense (a) the Debtor shall remove the Infor Software from the Purchased Assets, and (b) the Debtor shall cause the Infor Software to be transferred to another platform which is not part of the Purchased Assets prior to Closing. Neither the Debtor nor the Purchaser shall be deemed to infringe the Infor Software nor violate or breach any Alleged Infor License as a result of any of their acts or omissions performed or occurring in furtherance of their performance of their respective obligations described in this paragraph.

No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the sale of the Purchased Assets.

At Closing, the Debtor shall be, and hereby is, authorized to pay from the proceeds of the Sale (i) on account of the Professionals' Carve Out[1], $100,000 to be deposited into escrow in the Posternak Blankstein & Lund LLP Clients Funds Account and held pending further order of this Court, (ii) all real estate taxes accrued on the Assets but unpaid through the Closing, and (iii) the Debtor shall pay all remaining Sale proceeds to Sovereign Bank.[2]

This Order and the Asset Purchase Agreement shall be binding in all respects upon all Persons, including, without limitation, the Debtor and its creditors (whether known or unknown), employees and shareholders, the non-Seller parties to the Assumed Executory Contracts, governmental authorities, and each of their respective successors or assigns.

This Order shall be effective immediately upon entry, and no stay of execution applies with respect to this Order under Bankruptcy Rule 6004(h), 6006(d) or otherwise. This Order is a final order for purposes of 28 U.S.C. § 158.

SO ORDERED:

Dated: October 27, 2010

_____
Honorable Melvin S. Hoffman
United States Bankruptcy Judge

---

[1] As defined in this Court's Final Order Authorizing Incurrence of Indebtedness with Administrative Superpriority and Secured By Liens On Assets Of The Debtors And Granting Other Relief [Doc. No. 101]

[2] Subject to the Committee's right to assert any and all Claims and Defenses, as that term is defined in the Interim Order Authorizing the Incurrence of Indebtedness with Administrative Superpriority and Secured by Liens on Assets of the Debtor and Granting Other Relief, entered by the Bankruptcy Court on August 24, 2010 [Docket No. 49], that expire on November 22, 2010.

9

# SCHEDULE A

| Purchased Assets | Allocated Consideration |
|---|---|
| **Tangible Property** | $2,000,000 |
| **4550 Hwy 20, Conyers, GA** <br> Vacant land containing approximately 28 acres improved with a granite quarry. | $225,000 |
| **Groton Rd., Westford, MA** <br> 101 acres of industrial land improved with 84,238 s.f. of industrial buildings | $2,000,000 |
| **Lumber St., Hopkinton, MA** <br> 16.5 acres of vacant land improved with a granite quarry. | $750,000 |
| **Basin Rd., Addison, ME** <br> Vacant multi-lot parcel containing 564 acres of vacant land | $125,000 |
| **Starch Mill Rd., Mason, NH** <br> 218 acres of rural land improved with two granite quarries and two industrial buildings containing approximately 12,680 s.f. of building area | $750,000 |
| **Route 16, Madison, NH** <br> Vacant 172 acre site improved with a granite quarry | $350,000 |
| **102 Armory Rd., Milford, NH** <br> Approximately 72 acres of vacant land improved with five buildings and an inactive granite quarry | $800,000 |
| **Total:** | $7,000,000 |